JUDGE FRANK MONTALVO

**FILED**

MAY 2 0 2022

**CLERK, U.S. DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
BY_____
DEPUTY CLERK

**Brandon Callier**
**6336 Franklin Trail Drive**
**El Paso, TX 79912**
**(915) 383-4604**
**callier74@gmail.com**

**Plaintiff, Pro Se**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

**BRANDON CALLIER**
**6336 Franklin Trail Drive**
**El Paso, TX 79912**
           **Plaintiff**

      v.

**TAX DEFENDER LLC**
**c/o Legalinc Corporate Services Inc.**
**1967 Wehrle Drive, Suite 1 #086,**
**Buffalo, NY 14221,**

**TAX DEFENDER USA LLC**
**c/o Legalinc Corporate Services Inc.**
**1967 Wehrle Drive, Suite 1 #086,**
**Buffalo, NY 14221, &**

**THOMAS CAHILL**
**104 Levit Ave**
**Staten Island, NY 10314**
           **Defendant**

No. _____

# EP22CV0181

### COMPLAINT:

    Plaintiff, BRANDON CALLIER, brings this action against Defendants, TAX DEFENDER

LLC, TAX DEFENDER USA LLC, and THOMAS CAHILL, and alleges based on personal

knowledge and information, and belief, as follows:

### PRELIMINARY STATEMENT:

**1.**    As the Supreme Court recently explained, "Americans passionately disagree about many

things. But they are largely united in their disdain for robocalls. The Federal Government receives

1

a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

**2.**     Plaintiff Brandon Callier ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendants TAX DEFENDER LLC and TAX DEFENDER USA LLC sent a series of automated telemarketing calls for the purposes of commercial solicitation by contacting Plaintiff's cellular telephone number listed on the National Do-Not-Call Registry, which is prohibited by the TCPA.

**3.**     Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.

**PARTIES:**

**4.**     The Plaintiff is BRANDON CALLIER ("Plaintiff"), a natural person, resides in El Paso, Texas, and is a citizen of the State of Texas, and was the individual who received the alleged phone calls in this case on his private mobile telephone, and was a resident of Texas during the calls, in this case in El Paso County, Texas.

**5.**     Defendant TAX DEFENDER LLC is a limited liability company organized and existing under the laws of New York, and can be served at its principal place of business located at: Legalinc Corporate Services, Inc., 1967 Wehrle Drive, Suite 1 #086, Buffalo, NY 14221. Tax Defender LLC markets and sells, inter alia, tax relief services, and engages in telemarketing into this district, as it did with the Plaintiff.

**6.**     Defendant TAX DEFENDER USA LLC is a limited liability company organized and existing under the laws of New York, and can be served at its principal place of business located at: Legalinc Corporate Services, Inc., 1967 Wehrle Drive, Suite 1 #086, Buffalo, NY 14221. Tax

2

Defender USA LLC markets and sells, inter alia, tax relief services, and engages in telemarketing into this district, as it did with the Plaintiff.

7.      Defendants TAX DEFENDER LLC and TAX DEFENDER USA LLC are alleged to be operating as a common enterprise and/or joint venture of one another. Plaintiff will refer to these corporate Defendants collectively as "TAX DEFENDER" in this Complaint.

8.      Defendant THOMAS CAHILL is an adult individual and the President and primary owner of TAX DEFENDER, who can be served at 104 Levit Ave, Staten Island, NY 10314.

**JURISDICTION AND VENUE**

9.      **Jurisdiction**. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Ser's., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiffs claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

10.     **Personal Jurisdiction**. This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

11.     **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims the calls and sale of goods and services directed at Texas residents, including the Plaintiff occurred in this District and because the Plaintiff was residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

**Statutory Background**

3

## The Telephone Consumer Protection Act

**12.**     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

### The TCPA Prohibits Automated Telemarketing Calls

**13.**     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call." See 47 U.S.C. § 227(b)(l)(A)(iii).

**14.**     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(l)(A). See 47 U.S.C. § 227(b)(3).

**15.**     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

**16.**     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

4

**17.** In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The National Do-Not-Call Registry

**18.** The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

**19.** The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

**20.** The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

**The TCPA Imposes Personal Liability on Individuals Who Participate in or Commission Telemarketing Calls**

**21.** Under the TCPA, an individual such as Mr. Cahill may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

5

[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user *as well as of that person*. 47 U.S.C. § 217 (emphasis added).

**22.**     When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. See, *e.g., Jackson's Five Star Catering, Inc., v. Beason,* 2013 U.S. Dist. LEXIS 159985, \*10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## The Texas Business and Commerce Code § 302.101

**23.**     The Texas Business and Commerce code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

**24.**     The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

**25.**     Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §302.303.

## FACTUAL ALLEGATIONS

6

**26.**     Defendants provides tax relief services to people in Texas and nationwide.

**27.**     Defendants routinely violates the TCPA as a part of their business model and knowingly and willfully commit TCPA violations.

**28.**     At all times relevant hereto, Plaintiff maintained and used a residential cellular telephone line, with phone number (915) 383-4604.

**29.**     At all times material hereto, Plaintiff was the subscriber of the telephone number (915) 383-4604 and paid his cell phone bill through Verizon.

**30.**     Plaintiff's phone number is his private cell phone number.

**31.**     Plaintiff's phone number is registered with Verizon as his personal telephone number and not as a business telephone number.

**32.**     Plaintiff's personal cellular telephone number (915) 383-4604 has been registered on the National Do-Not-Call Registry since December 3, 2007.

**33.**     Plaintiff registered his phone number on the Do Not Call list in order to obtain solitude from invasive and harassing telemarketing calls. The telemarketing calls prevented Plaintiff from using his phone for legitimate purposes.

**34.**     The Plaintiff has received at least fifteen (15) telemarketing calls between April 8, 2022 and April 28, 2022 to his personal cell phone number (915) 383-4604, without his prior express written consent and not related to an emergency purpose, promoting tax relief services from Defendants.

**35.**     **Call 1:** On April 8, 2022 at 11:24 AM, the Plaintiff received a prerecorded telemarketing call which displayed on Plaintiff's caller identification as (915) 440-3931.

**36.**     Upon answering the call, Plaintiff was greeted with a prerecorded and/or artificial voice message regarding tax relief services.

7

**37.**     Plaintiff pressed "one" and was then connected with a live male person, who attempted to sell Defendants' tax relief services to the Plaintiff.

**38.**     Plaintiff hung up the phone without giving Defendants permission to call back in the future.

**39.**     The call only lasted one (1) minute and twenty-eight (28) seconds.

**40.**     **Call 2**: On April 12, 2022 at 11:11 AM, Plaintiff received a missed call which displayed on Plaintiff's caller ID as (915) 440-3931.

**41.**     **Call 3**: On April 13, 2022 at 1:02 PM, Plaintiff received a missed call from phone number (915) 440-3931.

**42.**     **Call 4:** On April 19, 2022 at 8:13 AM, Plaintiff received a missed call from phone number (915) 440-3931.

**43.**     **Call 5:** On April 21, 2022 at 8:29 AM, Plaintiff received a missed call from phone number (929) 334-4394.

**44.**     **Call 6:** On April 21, 2022 at 10:03 AM, the Plaintiff received a prerecorded telemarketing call which displayed on Plaintiff's caller ID as (915) 440-3931.

**45.**     Upon answering the call, Plaintiff was greeted with a prerecorded and/or artificial voice message regarding tax relief services.

**46.**     Plaintiff pressed "one" and was then transferred to a live human being, "Mike Orozco", who attempted to sell Defendants' tax relief services to the Plaintiff.

**47.**     In order to confirm the caller's identity and his company's information, the Plaintiff feigned interest in Defendants' telemarketing pitch, and asked Defendants' representative to send Plaintiff an e-mail, but Plaintiff did not consent to receive any calls back in the future.

8

**48.**     **Calls 7-8**: On April 21, 2022 at 10:30 AM, Plaintiff received two (2) calls from phone number (929) 334-4394, but Plaintiff did not answer either call.

**49.**     **Call 9:** On April 21, 2022 at 10:32 AM, Plaintiff received a telemarketing call from phone number (929) 334-4394. The caller ID showed the name "Mike Orozco".

**50.**     Plaintiff answered and was connected with "Mike Orozco", who continued attempting to sell Defendants' tax relief services to the Plaintiff.

**51.**     Plaintiff ended the call, telling Mr. Orozco not to call him back prior to hanging up.

**52.**     **Call 10**: On April 21, 2022 at 10:38 AM, Plaintiff received another telemarketing call from phone number (929) 334-4394.

**53.**     Plaintiff answered and was connected with Mr. Orozco, who again attempted to sell Defendants' tax relief services to Plaintiff.

**54.**     **DNC Request:** Plaintiff instructed Mr. Orozco not to call back and hung up the phone after approximately one (1) minute and twenty-nine (29) seconds according to Plaintiff's phone records.

**55.**     **Calls 11-12:** On April 21, 2022 at 11:09 AM, the Plaintiff received two (2) missed telemarketing calls from phone number 929-334-4394, but Plaintiff did not answer either call.

**56.**     **Calls 13-14:** On April 21, 2022 at 3:25 PM and 3:44 PM, Plaintiff received two (2) missed telemarketing calls from phone number 929-334-4394, but Plaintiff did not answer either call.

**57.**     **Call 15**: On April 28, 2022 at 10:27 AM, Plaintiff received a missed telemarketing call from phone number (929) 334-4394.

**58.**     All of the calls as alleged in this action, initiated using the caller IDs (915) 440-3931

(929) 334-4394 to Plaintiff, were made by Defendants and/or their agents for the purposes of

promoting Defendants' tax relief services to Plaintiff.

**59.**     The following is a table detailing the telephone calls sent by Defendant to the Plaintiff's

cell phone number:

| Call: | Date: | Caller ID: | Time: | Outcome: | Notes: |
|---|---|---|---|---|---|
| 1 | April 8, 2022 | 915-440-3931 | 11:24 AM | 1 min 28 sec | Prerecorded Robocall |
| 2 | April 12, 2022 | 915-440-3931 | 11:11 AM | Missed Call | |
| 3 | April 13, 2022 | 915-440-3931 | 1:02 PM | Missed Call | |
| 4 | April 19, 2022 | 915-440-3931 | 8:13 AM | Missed Call | |
| 5 | April 21, 2022 | 929-334-4394 | 8:29 AM | Missed call | |
| 6 | April 21, 2022 | 915-440-3931 | 10:03 AM | 27 min 35 sec | Prerecorded Robocall. Transferred to Mike Orozco. |
| 7 | April 21, 2022 | 929-334-4394 | 10:30 AM | Declined Call | |
| 8 | April 21, 2022 | 929-334-4394 | 10:30 AM | Declined Call | |
| 9 | April 21, 2022 | 929-334-4394 | 10:32 AM | 5 min 53 sec | Call from Mike Orozco. Received e-mail from Defendants. |
| 10 | April 21, 2022 | 929-334-4394 | 10:38 AM | 1 min 29 sec | Call from Mike Orozco. |
| 11 | April 21, 2022 | 929-334-4394 | 11:09 AM | Declined Call | |
| 12 | April 21, 2022 | 929-334-4394 | 11:09 AM | Missed Call | |
| 13 | April 21, 2022 | 929-334-4394 | 3:25 PM | Missed call | |
| 14 | April 21, 2022 | 929-334-4394 | 3:44 PM | Missed call | |
| 15 | April 28, 2022 | 929-334-4394 | 10:27 AM | Missed Call | |

**60.**     Plaintiff does not owe any back taxes to any taxing authority such as the IRS or State of Texas, and has no need for tax relief services.

**61.**     Plaintiff was not interested in Defendants' tax relief services.

**62.**     Defendants' robocalls were impersonal and generic.

**63.**     Upon information and belief, Defendants' automated dialer used a random or sequential number generator to send automated calls to his cell phone.

**64.**     On May 5, 2022, Plaintiff conducted a search for Defendants on https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp, and Defendants do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents.  Plaintiff is a Texas resident.

**65.**     Defendants did not have the Plaintiff's prior express written consent to make any of these telemarketing calls.

**66.**     Prior to these unsolicited telephone communications, the Plaintiff has never done any business with Defendants and Plaintiff never provided Defendants with his cellular telephone number.

**67.**     To the extent, Defendants contends that they obtained consent or agreement from Plaintiff for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained. In any event, consent is an affirmative defense under the TCPA, this defense is unavailable unless Defendants can show that they had prior express consent in writing, and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and

11

maintaining records documenting such access. Defendants did not have prior express written consent to such calls from Plaintiff.

**68.**     Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

**69.**     Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with Verizon as a cellular telephone number and is used for personal purposes.

**70.**     These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

**71.**     Defendants are not an organization exempt from the TCPA.

**72.**     Defendants' calls to Plaintiff were "telephone solicitations" as defined by the TCPA.

**73.**     Defendants' calls to Plaintiff were "unsolicited advertisements" as defined by the TCPA.

**74.**     In summary, Plaintiff received fifteen (15) telemarketing calls from Defendants to Plaintiff's personal cell phone number which is registered on the National Do-Not-Call list. Five (5) of these calls (Calls # 1, 2, 3, 4, and 6) were sent via an ATDS and/or prerecorded or artificial voice.

**COMMON ENTERPRISE AND JOINT VENTURE**

**75.**      Defendants TAX DEFENDER LLC and TAX DEFENDER USA LLC have operated as a common enterprise while engaging in the deceptive acts and practices and other violations of law alleged herein.  Defendants have conducted the business practices herein through an interrelated network of companies that have common ownership or officers, business functions, employees, office locations, and that have commingled funds.  Because these Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and

12

practices alleged herein. Defendant THOMAS CAHILL formulated, directed, controlled, had the authority to control, or participated in the acts and practices of TAX DEFENDER that constitute the common enterprise.

**76.** Specifically, on April 21, 2022, during the telemarketing calls, Defendants e-mailed Plaintiff a "SignEasy" link.

**77.** Plaintiff clicked said "SignEasy" link and was presented with an "Authorization Form" which included TAX DEFENDER LLC's name and logo. *See* Exhibit "1", a true and correct copy of said "Authorization Form".

**78.** The Authorization Form includes an address of 40 Wall St, New York, NY 10005, phone number: (800)593-2559, email address: info@taxdefenderusa.com, and website:

www.taxdefenderusa.com.

**79.** The Authorization Form also included the following language:

This authorization form acknowledges the consent given by you for the release of information provided by the IRS on the client's behalf. The 8821 authorization form signed by the client allows Tax Defender USA (hereafter referred to as "company") to investigate a compliance status with tax filings from the IRS. These tax investigations may include, but are not limited to open balances, missing tax returns, account transcripts, unmasked wage and income transcripts, and outside debt. Once a client signs the 8821 authorization form and has made a complete payment for the compliance check, the tax compliance analyst will contact the IRS on the client's behalf for the thorough tax investigation. After obtaining necessary information and transcripts provided by the IRS, a member from our company will contact the client to deliver the tax investigation and determine what's the best resolution suited for the client.

Should your payment default, be disputed, and/or incur any penalties of any kind, you will be liable to honor fee and said penalties.

Upon signing this document, you acknowledge that you understand the services provided and consent to proceed with Tax Defender USA.

Thank you,
Tax Defender USA
Tax Compliance Department
(646)450-6651

**80.** Both the name "Tax Defender LLC" and "Tax Defender USA" appear on the

13

"Authorization Form".

**81.**     Tax Defender USA LLC and Tax Defender LLC utilize the same website,

www.taxdefenderusa.com for conducting business online.

**82.**     The address listed on the website for the Defendants, www.taxdefenderusa.com, is also

40 Wall St, New York, NY 10005 (the same street address listed for Tax Defender LLC).

**83.**     According to the New York Department of State's website, Tax Defender LLC was

formed as a business entity on October 16, 2019. *See* Exhibit "2".

**84.**     A WhoIs domain search conducted reveals that the website www.taxdefenderusa.com

was created on October 20, 2020. The website's registration was updated on October 21, 2021

and expires on October 20, 2022. *See* Exhibit "3".

**85.**     According to the New York Department of State's website, Tax Defender USA LLC was

formed as a business entity on May 10, 2021. *See* Exhibit "4".

**86.**     Tax Defender USA's logo as it appears on www.taxdefenderusa.com is the same logo as

Tax Defender LLC's logo as it appears on the Authorization Form.

**87.**     Tax Defender USA LLC and Tax Defender LLC are engaged in a joint business venture

to promote their tax relief services to consumers.

**88.**      Tax Defender USA and Tax Defender LLC are both jointly responsible for initiating the

illegal telemarketing calls as Plaintiff alleges in this Complaint.

**89.**     Tax Defender USA LLC and Tax Defender LLC have common ownership and

management.

**90.**     Tax Defender USA LLC and Tax Defender LLC both operate at 40 Wall St, New York,

NY 10004.

**91.**     Thomas Cahill is the President and principal owner of both Tax Defender USA LLC and

14

Tax Defender LLC.

**92.** Tax Defender USA LLC and Tax Defender LLC use both of their names in their joint business operations and marketing materials.

**93.** Upon information and belief, Tax Defender USA LLC and Tax Defender LLC co-mingle their resources and jointly use their funds to pay for illegal robocalls to be sent to consumers.

## DEFENDANT THOMAS CAHILL IS PERSONALLY LIABLE

**94.** Mr. Cahill is personally liable under the "participation theory" of liability because he had direct, personal participation in the conduct that violated the TCPA, or knowingly authorized such conduct. See, e.g., *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330-CIV, 2015 WL 3644598, at *3 (S.D. Fla. June 10, 2015).

**95.** Mr. Cahill knew of Tax Defender's TCPA violations, and directed employees and/or agents of Tax Defender to continue making those violations.

**96.** This is because Mr. Cahill authorized and oversaw each of Tax Defender's telemarketing processes and calls which were made on behalf of Tax Defenders.

**97.** Mr. Cahill knew, or should have known, that Plaintiff's telephone number was on the National Do-Not-Call Registry long before the phone calls were sent, and despite this fact, Mr. Cahill made the decision to direct his agents and/or employees to call the Plaintiff's cell phone number without his prior express written consent.

**98.** Mr. Cahill makes the day-to-day decisions for Tax Defenders.

**99.** Mr. Cahill made the decision to target Texas telephone numbers for telemarketing purposes using automated telemarketing calls, includes Plaintiff's number.

**100.** Furthermore, Mr. Cahill is also personally liable because he was responsible for ensuring Tax Defender's agents' and/or employees' TCPA compliance.

**101.** "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

**102.** The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

**103.** Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.
>
> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than

16

> a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

**104.** The Same Court held that corporate officers were also personally liable for DTPA violations:

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct.....For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation......Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

**105.** At all times material to the Complaint, acting alone or in concert with others, Defendant

Thomas Cahill has formulated, directed, controlled, had the authority to control, or participated

in the acts and practices of Tax Defender including the acts or practices set forth in this

Complaint.

**106.** Defendants Thomas Cahill is the President, principal director and operator of Tax

Defender and control the day-to-day operations of Tax Defender and directed their employees,

agents, salespersons, and solicitors to make TCPA violating phone calls and to solicit tax relief

services.

**107.** Defendant Thomas Cahill approved the telemarketing scripts, signed the contracts, paid

commissions for the illegal behavior, and directed the illegal calls to be made for Tax Defender's

financial benefit.

**108.** Defendant Thomas Cahill all knowingly and willfully ignore the TCPA.

17

**109.**   Defendant Thomas Cahill is not merely a bystander.  He is the mastermind that schemed, planned, directed, initiated and controlled the illegal behavior.

**110.**   Defendant Thomas Cahill is well aware this conduct violated the TCPA and Tex. DPTA and refused to alter the behavior. Mr. Cahill is the sole director of Tax Defender and the only persons with the power to make the unlawful behavior stop.  Yet, he has taken no steps to stop the behavior because the behavior benefits them financially.  Defendants break the law with their eyes and pocketbooks wide open.

**111.**   Defendants Thomas Cahill, Tax Defender LLC, and Tax Defender USA LLC operated as a common enterprise while engaging in the deceptive acts and practices and violations of law and formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Tax Defender that constitutes a common enterprise.

**112.**   Defendant Thomas Cahill should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they actually committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

**113.**   Defendant Thomas Cahill should be held liable because to do otherwise would simply allow him to simply dissolve Tax Defender LLC and Tax Defender USA LLC and set up a new corporation and repeat their conduct.  This would result in both the TCPA and DTPA being unenforceable.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

**114.**   Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

18

**115.**    Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

**116.**    Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

**117.**    Defendants' calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

**118.**    The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

### The Plaintiff's Cell Phone is a Residential Number

**119.**    The calls were to the Plaintiff's cellular phone (915) 383-4604 which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

**120.**    The actions of the Defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 U.S.C. § 227(b). The calls by the Defendant violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 U.S.C. § 227(c)(5) and 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e).

**121.**   The calls by the Defendants violated Texas law by spoofing the caller ID's per 47 U.S.C. § 227(e) which in turn violates the Texas statute.

### Violations of the Texas Business and Commerce Code § 302.101

**122.**   The actions of the Defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

**123.**   Under Texas Business and Commerce Code § 302.302, Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## CAUSES OF ACTION

### I.   FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

**124.**   Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**125.**   The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone numbers without his prior express written consent.

**126.**   Plaintiff was statutorily damaged at least five (5) times under 47 U.S.C. § 227(b)(3)(B) by Defendants by the telephone calls described above, in the amount of $500.00 per call.

**127.**   Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(b)(3)(C) for this willful or knowing violation.

20

**128.** Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II.   SECOND CLAIM FOR RELIEF

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227(c) et seq.)

**129.** Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**130.** Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

**131.** Plaintiff was statutorily damaged at least fifteen (15) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500.00 per call.

**132.** Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful or knowing violation.

**133.** As a result of Defendants' and Defendants' agents' violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages, or $1,500.00 if trebled, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

**134.** Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing

robocalls to cellular telephone numbers without the prior express written consent of the called party.

### III.   THIRD CLAIM FOR RELIEF:

### (Violations of The Texas Business and Commerce Code 305.053)

**135.**   Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

**136.**   The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone numbers without his prior express written consent in violation of 47 U.S.C. § 227 et seq. The Defendant violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

**137.**   Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**.

**138.**   Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**.

### IV.   FOURTH CLAIM FOR RELIEF

### (Violations of The Texas Business and Commerce Code 302.101)

**139.**   Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

**140.**   The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-

registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

**141.**     Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302**.

**142.**     Plaintiff is entitled to an award for all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees and attorney's fees.

## V.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOES as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.     An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.     An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for 15 calls.

E.     An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.     An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.     An award to Plaintiff of damages, as allowed by law under the TCPA;

H.      An award to Plaintiff of pre-judgment and post-judgment interest, and costs, as allowed by law and equity

I.      Such further relief as the Court deems necessary, just, and proper.

May 20, 2022                              Respectfully submitted,


Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604


## I.      **Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: May 20, 2022


Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604