**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **BRANDON CALLIER,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No. EP-22-CV-0181** |
| | } | |
| **TAX DEFENDER LLC,** | } | |
| **TAX DEFENDER USA LLC, and** | } | |
| **THOMAS CAHILL** | } | |
| | } | |
| **Defendants.** | } | |

**DEFENDANTS TAX DEFENDER LLC AND THOMAS CAHILL'S MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE
GRANTED**

**COME NOW**, TAX DEFENDER LLC[1] and THOMAS CAHILL, Defendants in the

above-entitled and captioned cause, and respectfully file this Motion to Dismiss for Failure to State

a Claim Upon Which Relief Can be Granted against Plaintiff's Complaint pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure and would respectfully show the Court as follows:

**I.
INTRODUCTION**

1.      Plaintiff Brandon Callier ("Plaintiff") filed suit against Defendants Tax Defender

LLC and Thomas Cahill (hereinafter collectively referred to as "Defendants") for alleged

telemarketing calls made to his telephone number in violation of the Telephone Consumer

Protection Act ("TCPA") and the Texas Business and Commerce Code. (*See* ECF No. 1,

hereinafter referred to as "Pl.'s Compl."). Specifically, Plaintiff avers that Defendants made a total

of 15 telemarking calls to his personal cellphone between April 8, 2022 and April 28, 2022 without

---

[1] Plaintiff also sued Tax Defender USA LLC.  Tax Defender USA LLC is a d/b/a of Tax Defender LLC and is not a
separate entity which can be sued.

42N6409

his prior express written consent. Pl.'s Compl., ¶ 34. Plaintiff further alleges that the telemarketing calls were in violation of the TCPA and the Texas Business and Commerce Code because his cellphone number is registered in the Do Not Call Registry "in order to obtain solitude from invasive and harassing telemarketing calls." *Id.*

2.      Despite Plaintiff's baseless TCPA allegations, Defendants Tax Defender LLC and Thomas Cahill will show that Tax Defender LLC did not use an automatic telephone dialing systems to make calls to the Plaintiff, that Tax Defender LLC does not use prerecorded messages to contact prospective clients and that Tax Defender LLC has policies and procedures in place to vet prospective customers that are on the Do Not Call Registry. Therefore, the TCPA and the Texas Business and Commerce Code are not applicable to the calls made by Tax Defender LLC and of which Plaintiff complains herein. Accordingly, Plaintiff fails to state claims upon which relief can be granted and Tax Defender LLC and Thomas Cahill's Motion to Dismiss should be granted and Plaintiff's claims should be dismissed with prejudice.

## II.
## <u>FACTUAL BACKGROUND</u>

3.      Plaintiff's Complaint is based on a series of 15 alleged telephone calls made from April 8, 2022 and April 28, 2022. *Id.* The lynchpin of Plaintiff's allegations is his conclusory allegation that "Defendants automated dialer used a random or sequential number generator to send automated calls to his cellphone." Pl.'s Comp., ¶ 63.

4.      More specifically, Plaintiff alleges that on April 8, 2022 he "received a prerecorded telemarketing call . . . [and] [u]pon answering the call, Plaintiff was greeted with a prerecorded and/or artificial voice message regarding tax relief service." Pl.'s Compl., ¶¶ 35-36. Plaintiff alleges he received 4 missed calls from the same phone number after the initial call on April 8,

42N6409

2022. *Id.,* ¶¶ 40-43. Subsequently, Plaintiff claims he received a prerecorded telemarketing call and was greeted with a prerecorded and/or artificial voice message regarding tax relief services. *Id.*, ¶ 44. Plaintiff states that he "pressed 'one' and was then transferred to a live human being, 'Mike Orozco'" who then "tried to sell Defendants' tax relief services to Plaintiff." *Id.*, ¶ 46. Plaintiff claims that "in order to confirm the caller's identity and his company's information, the Plaintiff feigned interest in Defendants' telemarketing pitch, and asked Defendants' representative to send Plaintiff an e-mail, but Plaintiff did not consent to receive any calls back in the future." *Id.*, ¶ 47. Plaintiff further claims he never consented to receive the calls and that he has "been on the Do-Not-Call registry since December 13, 2007." *Id.*, ¶ 65, 32.

5.     Plaintiff states that after he created and consented to a business relationship during the April 21, 2022 call, albeit by "feigning interest," he received a total of 9 more calls from Defendants, 8 of which were on the same day which Plaintiff told Defendants he was interested in tax relief services. The last call Plaintiff complains of was made a week later on April 28, 2022. *Id.,* ¶¶ 48-57.

6.     Plaintiff asserts in his Complaint that "Defendants' calls to Plaintiff were 'telephone solicitations'" and "'unsolicited advertisements' as defined by the TCPA" and that five of these calls were sent via automatic telephone dialing system ("ATDS") and/or pre-recorded or artificial voice.  *Id.*, ¶¶ 72-74.

7.     Based on these allegations, Plaintiff brings four counts for relief against Defendants. In Count I, Plaintiff alleges that Defendants violated the automated call prohibition of the TCPA, 47 U.S.C. § 227(b)(1)(A), because the calls were placed using an ATDS or using an automatically generated or prerecorded voice. *Id.*, ¶¶ 124-128.

3

8.      In Count II, Plaintiff further alleges that the calls violated the TCPA, 47 U.S.C. § 227(c), because his telephone number is listed on the National Do-Not-Call Registry. *Id.*, ¶¶ 129-134.

9.      In Count III, Plaintiff alleges a violation of § 305.053 of the Texas Business & Commerce Code, by engaging in "telemarketing robocalls to Plaintiff's cellular telephone number without prior express written consent" in violation of the TCPA. *Id.*, ¶¶ 135-138.

10.     Finally, in Count V, Plaintiff alleges a violation of § 302.101 of the Texas Business & Commerce Code, by engaging in telephone solicitation to a purchaser located in this state without a registration. *Id.*, ¶¶ 139-142.

### III.
### <u>LEGAL STANDARD</u>

11.     Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint for "failure to state claims for which relief can be granted." Fed. R. Civ. P. 12(b)(6). The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) (internal quotation marks and citation omitted); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

12.     "The plausibility standard is not taken akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.A AT 570). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.* A complaint need not include "detailed factual allegations," but must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Thus, although the court must accept well-pleaded allegations in a complaint as true, it does not afford conclusory allegations similar treatment. *See Kaiser Aluminum & Chem. Sales, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Ala. Power Co.,* 505 F.2d 97, 100 (5th Cir. 1974)).

13.     Courts should construe the pleadings and briefs of pro se litigants liberally, applying less stringent standards than those reserved for counsel. *Andrade v. Gonzales,* 459 F.3d 538, 543 (5th Cir. 2006); *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). Nevertheless, like represented parties, pro se litigants must adequately plead facts that, when liberally construed, state a plausible claim to relief. *See EEOC v. Simbaki, Ltd.,* 767 F.3d 475, 484 (5th Cir. 2014); *Grant*, 59 F.3d at 524; *see also Barker v. Norman,* 651 F.2d 1107, 1129 n. 26 (5th Cir. Unit A July 1981) ("[A] district judge . . . is neither required nor permitted to be counsel for any party, whether that party is appearing pro se or through counsel.").

### IV.
### ARGUMENTS & AUTHORITIES

**A. Plaintiff's TCPA Allegations Fail to a State a Claim upon Which Relief can be granted Because Plaintiff Fails to Allege Facts Giving Rise to a Plausible Inference That any of the Calls At-Issue Were Placed Using an ATDS.**

14.     The TCPA makes it unlawful for any person to "to make any call (other than a call made . . . with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone service.. . ." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an ATDS as

"equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

15.     To sufficiently plead a TCPA claim, a plaintiff must do more than plead that a phone call was "automated" or placed with an "ATDS." *Reed v. Quicken Loans, Inc*., No. 3:18-cv-3377-K, 2019 U.S. Dist. LEXIS 159935, at *5-6 (N.D. Tex. Sep. 3, 2019) (citations omitted). Conclusory TCPA pleading is insufficient. *Cunningham v. Nationwide Sec. Sols., Inc*., No. 3:17-CV-00337M, 2017 U.S. Dist. LEXIS 223796, at *7 (N.D. Tex. Nov. 2, 2017) (Lynn, C.J.) ("simply alleging the use of an ATDS, without more, is insufficient to sustain a TCPA claim."). A plaintiff must plead that the phone call was made "with an ATDS that randomly or sequentially generated his number" and assert a badge of ATDS, like dead-air time, for the court to infer more than mere possibility of misconduct. *See Adams v. Safe Home Sec. Inc*., No. 3:18-cv-03098-M, 2019 U.S. Dist. LEXIS 126522, at *2-3 (N.D. Tex. July 30, 2019) (citing *Cunningham* for support that a plaintiff can plead facts...and a "description of the calls as including dead-air time" as "sufficient to establish the use of an [ATDS]").

16.     Moreover, the Supreme Court has recently ruled that a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021). The Supreme Court reasoned that the statutory context confirms that the autodialer definition excludes equipment that does not use a random or sequential number generator because of the unique problems that the use of random or sequential number generator technology caused. *Id.,* at 1171-72.

17.     First, Plaintiff's claim for violation of the TCPA in Count I fails because Plaintiff merely regurgitates the statutory language but fails to allege facts giving rise to a plausible

inference that any of the calls at-issue were placed using an ATDS. In particular, Plaintiff's Complaint contains no factual support to plausibly conclude that the system at issue can store numbers or produce numbers using a random or sequential number generator, and has the capacity to dial such numbers without human intervention, as the Supreme Court stated was required to maintain a cause of action pursuant to the TCPA.

18.     The following summarizes Plaintiff's inadequate allegations regarding Defendants' alleged ATDS use:

    a.  "Plaintiff received fifteen (15) telemarketing calls from Defendants to Plaintiff's personal cell phone number . . . [f]ive of these calls (Calls # 1, 2, 3, 4 and 6) were sent via an ATDS and/or prerecorded or artificial voice." Pl.'s Compl. ¶ 74;

    b.  "Defendants' automated dialer used a random or sequential number generator to send automated calls to his cellphone." *Id.*, ¶ 63; and

    c.  "The Defendants violated 47 U.S.C. 227(d) and 47 U.S.C. (d)(3) and 47 U.S.C. 227(e) by using an automated dialing system that does not comply with the technical and procedural standards under this subsection." *Id.*, ¶ 136.

19.     As shown above, Plaintiff has merely parroted the statutory language without alleging any "badges" of an ATDS that would permit the inference that an ATDS was used in placing the purported calls at-issue. Plaintiff's copy-and-paste job is not entitled to the assumption of truth, and should be dismissed. Conclusory and baseless statements, as those contained in Plaintiff's complaint, are exactly what the Supreme Court has ruled constitute mere "labels and

conclusions, and a formulaic recitation of the elements of a cause of action" and are therefore subject to dismissal. *Twombly*, 550 U.S. at 555.

20.     Furthermore, Tax Defender LLC and Thomas Cahill have the recordings of the alleged telemarketing calls that Plaintiff contends were used using an ATDS and/or prerecorded or artificial voice. Plaintiff alleges that the first call he received from Defendants was a prerecorded telemarketing call and that upon Plaintiff pressing "one," he has connected with a "live male person" who attempted to sell him tax relief services. Pl.'s Compl. ¶¶ 35-37. However, the recording of the call will show this honorable court that there was no prerecorded message or call, or any sign whatsoever of a "badge" of an ATDS. In fact, the recording will show Plaintiff speaking with a female representative and Plaintiff saying he was interested in tax relief services and his willing to speak to a specialist. (See Recording/Transcript of Telephone Call from April, 8, 2022, attached hereto as Ex. A to Ex. 1[2]).

21.     Similarly, what Plaintiff refers to as "Call 6," consisted of Plaintiff speaking to a female representative and a subsequent transfer to a male specialist. (See Recording/Transcript of Telephone Call from April, 21, 2022, attached hereto as Ex. B to Ex. 1). As is evidenced by the recording/transcript of this call, no ATDS and/or prerecorded or artificial voices were used and there are no badges of an ATDS which can support Plaintiff's claims under the TCPA. *Id.*

22.     The remainder of the calls which Plaintiff alleges were made using an ATDS and/or prerecorded or artificial voice (Call 2, 3, and 4) were conceded by Plaintiff to have been "missed calls." Pl.'s Compl., ¶¶ 40-42. Again, Plaintiff merely regurgitates the statutory language but fails to allege facts giving rise to a plausible inference that any of the calls at-issue were placed using

---

[2] Ex. 1 A and B (April 8, 2022 and April 21, 2022 Audio Recordings) will be hand delivered to the District Clerk

an ATDS or prerecorded or artificial voice as he claims. Plaintiff wholly fails to allege facts which support a plausible conclusion that the system at issue can store numbers or produce numbers using a random or sequential number generator, and has the capacity to dial such numbers without human intervention by simply stating that he had missed calls from Defendants.

23.     Secondly, Plaintiff fails to state a viable claim under the TCPA because he consented to receiving all of the alleged calls included within his complaint. A violation of the TCPA occurs when the complained-of calls were made without "the prior express consent of the called party." 47 U.S.C. §§ 227(b)(1)(A), (b)(1)(B). The TCPA does not require any one method for obtaining prior express consent. *Fober v. Mgmt. & Tech. Consultants, LLC*, 886 F.3d 789, 793 (9th Cir. 2018). Consent may be obtained directly or indirectly by and through an intermediary. *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 343 (6th Cir. 2016). The main consideration in determining whether there was consent is whether the called party granted permission to be called concerning a particular topic. *Fober*, 886 F.3d at 793. Courts have dismissed TCPA claims where a defendant shows that a plaintiff, in connection with a transaction, provided his number and signed forms consenting to certain calls. *See, e.g., Latner v. Mount Sinai Health Sys., Inc.*, 879 F.3d 52, 55 (2d Cir. 2018) (affirming judgment on the pleadings where TCPA plaintiff, in connection with a health examination, provided his number and signed forms consenting to use of his information for treatment recommendations); *Fober*, 886 F.3d at 795 (affirming summary judgment where TCPA plaintiff, in connection with enrolling in a health insurance plan, provided her number and signed forms consenting to contact for quality improvement); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1126 (11th Cir. 2014) (granting summary judgment where TCPA plaintiff, upon treatment at a hospital, provided his number and signed forms wherein he consented to contact for payment); *Baisden*, 813 F.3d at 348-49 (affirming summary judgment where, in

9

connection with treatment at a hospital, a TCPA plaintiff provided his number and signed forms consenting to use of his information for billing).

24.     Evidence showing consent is properly considered on a Rule 12(b)(6) motion and provides sufficient grounds for dismissal of a TCPA action. In *Zean v. Fairview Health Services*, 858 F.3d 520, 524 (8th Cir. 2017), a TCPA plaintiff purchased a medical device from the defendant. At the time of the transaction, the plaintiff provided his phone number and signed documents giving consent to defendant and "its approved agents" to call him regarding his "services and accounts." *Id.* Thereafter, he received calls soliciting him to buy supplies for his medical device. *Id.* In his complaint, the plaintiff alleged that these calls violated the TCPA and that he did not give prior express consent. *Id.* at 522. In response, the defendant moved to dismiss under Rule 12(b)(6). *Id.* Attached to its motion, the defendant submitted exhibits of the signed documents. *Id.* at 524. In affirming the lower court's dismissal, the Eighth Circuit held that the contractual documents could be considered on a Rule 12(b)(6) motion. *Id.* at 526-27. As such, the court held that the contractual documents refuted the plaintiff's denial of prior express consent, which it determined was a conclusory legal assertion that the court was not bound to accept. *Id.* at 527. Therefore, the court concluded that the calls at issue were within the scope of the consent that the plaintiff had provided. *Id.* at 528. Here, similar to the plaintiff in *Zean*, Plaintiff gave his prior express consent during the recorded telephone calls.

25.     In the instant case, Plaintiff provided his oral consent for Tax Defender to contact him in connection with the tax relief services offered from the first call Plaintiff received. (See Recording/Transcript of Telephone Call from April, 8. 2022, attached hereto as Ex. A to Ex. 1). As stated above, on what Plaintiff refers to as "Call 1," Plaintiff spoke to a female representative named Roxanne who informed Plaintiff of Defendants alleged tax relief services. *Id.* Roxanne

asked Plaintiff if he was willing to listen to one of Tax Defender's specialist to hear more about the services they could offer Plaintiff, to which Plaintiff consented and agreed. *Id.* At no point during the call did Plaintiff state he was on the Do Not Call Registry, that the call was unsolicited, or that he was simply just not interested in any tax relief service. *Id.* Moreover, Plaintiff never requested that Tax Defender stop calling him at any point. Rather, after agreeing to speak to a specialist, the call got disconnected. *Id.* Thereafter, Tax Defender continued to reach out to Plaintiff pursuant to his earlier verbal consent and interest that he was in need of tax relief services. *Id.*

26.     More importantly, as demonstrated by the audio and transcript of the recording of the April 21, 2022 call, Plaintiff unequivocally waived any rights under the TCPA and any other state or federal no-contact registries Plaintiff enlisted by agreeing to speak to a specialist and providing both his cellphone number and email address. (See Recording/Transcript of Telephone Call from April, 21. 2022, attached hereto as Ex. B to Ex. 1.) Not only did Plaintiff provide his information to Tax Defender, but he "feigned" interest in the tax relief services offered by Tax Defender and, through such, consented to future communications from Tax Defender to provide the services which Plaintiff requested and stated, on a recorded line, that he was interested in. *Id.* Through this telephone transactions with Tax Defender, Plaintiff provided express consent to future calls regarding this subject matter and waived his TCPA and state law claims. *Id.* Given Plaintiff's prior express consent, none of the complained-of calls were made in violation of the TCPA or state laws.

27.     Based on the foregoing, Plaintiff fails to state a claim upon which relief can be granted under the TCPA and, therefore, Tax Defender LLC and Thomas Cahill's Motion to Dismiss should be granted and Plaintiff's claims should be dismissed with prejudice.

42N6409

B. **Plaintiff's Alleged Claims for Violations of 47 U.S.C. § 227(c) Fail to Pursuant to the "Error" Exemption Provided by 47 C.F.R. § 64.1200(c)(2)(i) Because Defendant Tax Defender LLC Has Policies And Procedures In Place To Vet Prospective Customers That Are On The Do Not Call Registry.**

28.     Plaintiff further alleges in his complaint that the calls made by Defendants violated the TCPA, 47 U.S.C. § 227(c), because his telephone number is listed on the National Do Not Call Registry. Pl.'s Compl., ¶130. Section 227(c) grants a right of action to a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of TCPA regulations, including the Do Not Call prohibitions. 47 U.S.C. § 227(c); 47 C.F.R. §64.1200(c)(2). However, as with Count I, Plaintiff's allegations fail to state a claim upon which relief can be granted and are subject to dismissal because Defendants fall squarely within an exemption from liability as they can demonstrate that the violation resulted from an error, as set forth in 47 C.F.R. §64.1200(c)(2)(i).

29.     The corresponding TCPA regulations prohibit any person or entity from initiating a telephone solicitation to any residential telephone subscriber who has registered his telephone number on the Do Not Call Registry. See 47 C.F.R. § 64.1200(c)(2). The TCPA further provides that a plaintiff may only prevail if he has received more than one violative telephone call within a twelve-month period. 47 U.S.C. § 227(c)(5). There are, however, exemptions from liability for a violation if an entity can demonstrate that a violation is the result of "error" and that it meets the following standards:

(A) Written procedures. It has established and implemented written procedures to comply with the national do-not-call rules;
(B) Training of personnel. It has trained its personnel, and any entity assisting in its compliance, in procedures established pursuant to the national do-not-call rules;
(C) Recording. It has maintained and recorded a list of telephone numbers that the seller may not contact;
(D) Accessing the national do-not-call database. It uses a process to prevent telephone solicitations to any telephone number on any list established  pursuant to the do-not-call rules, employing a version

12

> of the national do-not-call registry obtained from the administrator
> of the registry no more than 31 days prior to the date any call is
> made, and maintains records documenting this process.
> . . .
> (E) Purchasing the national do-not-call database . . . It purchases
> access to the relevant do-not-call data from the administrator of the
> national database and does not participate in any arrangement to
> share the cost of accessing the national database, including any
> arrangement with telemarketers who may not divide the costs to
> access the national database among various client sellers. . . .
>
> 47 C.F.R. § 64.1200(c)(2)(i).

30.     In the instant case, Tax Defender LLC is entitled to the "error" exemption enumerated above given that it has established and implemented procedures to prevent telephone solicitations in violation of the TCPA regulations. (See Ex. 1).  As required by § 64.1200(c)(2)(i), Tax Defender LLC's policies and procedures include a recorded list of telephone numbers that its employees and/or representative may not contact pursuant to the national Do Not Call registry and database.

31.     Furthermore, Tax Defender LLC provides training on a regular basis to its employees and representatives in order to comply with these written policies and procedures. (See Ex. 1). Albeit Plaintiff's cellphone number was allegedly on the Do Not Registry since 2007, Defendants are exempt from any liability under 47 C.F.R. § 64.1200(c)(2) pursuant to the "error" exemption. Thus, Plaintiff fails to state a claim upon which relief can be granted under the TCPA and, therefore, Tax Defender LLC's and Thomas Cahill's Motion to Dismiss should be granted and Plaintiff's claims should be dismissed with prejudice.

C.  **Plaintiff's Claims Alleging Violations of the Texas Business and Commerce Code Fail Because Plaintiff's TCPA Claims Fail as a Matter of Law and any Claims Based on the Texas Business and Commerce Are Dependent on the Viability of Plaintiff's TCPA Claims.**

32.     Lastly, absent viable claims under the TCPA, Plaintiff cannot assert state law claims and, as such, Plaintiff claims alleging violations of the Texas Business and Commerce Code

13

42N6409

Section fail because the Texas Business and Commerce is coextensive with 47 U.S.C. § 227(b)(1)(A). The Texas statute provides that "[a] person who receives a communication that violates 47 U.S.C. Section 227. . . may bring an action in this state against the person who originates the communication . . ."

33.      However, if a TCPA claim does not survive dismissal, then neither does a claim pursuant to Section 305.052. *See Politi*, 2019 U.S. Dist. LEXIS 102545, at *18 (dismissing § 305.053 claim where TCPA claim was subject to dismissal); *see also Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 815 (S.D. Tex. 2014) ("If no violation of the TCPA exists, there is no violation of the Texas TCPA."). Accordingly, for the reasons Plaintiff's TCPA claims fail, so must his claims pursuant to Texas Business and Commerce Code. Therefore, the Court should grant Tax Defender USA LLC's and Thomas Cahill's Motion to Dismiss and Plaintiff's claim pursuant to the Texas Business and Commerce Code should be dismissed with prejudice.

## V.

## CONCLUSION

For the reasons stated herein, Tax Defender LLC and Thomas Cahill respectfully request that the Court dismiss each of Plaintiff's claims against Defendants Tax Defender USA LLC and Thomas Cahill for failure to state a claim upon which relief may be granted and enter judgment in their favor, including all fees and costs. Defendants Tax Defender LLC and Thomas Cahill respectfully request any and all other relief to which they may be justly entitled.

*< signature page follows >*

42N6409

Respectfully submitted,

KEMP SMITH LLP
P.O. Box 2800
El Paso, Texas 79999-2800
915.533.4424
915.546.5360 (FAX)


By: ___/s/ Shelly W. Rivas_____
      Mark N. Osborn
      State Bar No. 15326700
      mosborn@kempsmith.com
      Shelly W. Rivas
      State Bar No. 24003145
      srivas@kempsmith.com


## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing was served on all parties and counsel of record via the Court's CM/ECF system.  A copy of the Motion and flash drive containing Exhibit 1 A and B was mailed to Brandon Callier, 6336 Franklin Trail, El Paso, Texas 79912 by certified mail, return receipt requested on  July 21, 2022.


      /s/ Shelly W. Rivas_____
      Shelly W. Rivas

42N6409